**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **KENNETH BOLLING,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **2:19-CV-244-ALB-SRW** |
| | § | |
| **CITY OF MONTGOMERY, et al.** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR  SUMMARY JUDGMENT**

The Defendant, City of Montgomery, moves for summary judgment under <u>Fed. R. Civ. P.</u> 56. This brief is submitted in support of its arguments that no genuine issue of any material fact can be shown entitling it to a judgment as a matter of law.

## I.  <u>Summary Judgment Standard</u>

In *Huddleston v. Johnson,* 2009 WL 2208165, S.D.Ala., this Court reiterated the analysis undertaken by the Court in ruling on a motion for summary judgment. In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The *Federal Rules of Civil Procedure* grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact....'  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting *Fed.R.Civ.P.* 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton,* 883 F.2d 923, 934 (11th Cir. 1989).

Rule 56(e), however, states "an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  *Fed.R.Civ.P.* 56(e); *see also Celotex Corp.,* 477 U.S. at 325-27.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,* 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted). The movant may support its assertion that any fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits..., stipulations…, admissions, interrogatory answers, or other materials." *Fed.R.Civ.P. 56(e)(2).*

## II.  Procedural History

On April 4, 2019, Plaintiff filed a four count complaint in the U.S. District Court for the Middle District of Alabama, against the City of Montgomery. (Doc. 1). Count I alleges a violation of Plaintiff's procedural due process rights pursuant to the Alabama Constitution, Art. I, §§ 13 and 35 and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. Count II alleges violations of the Fair Labor Standards Act. Count III alleges

breach of employment contract. Count IV alleges racial. discrimination in violation of 42 USC 1981. (Doc. 1).

On April 26, 2019, Defendant filed a response to Plaintiff's complaint denying all material allegations and asserting certain affirmative defenses. (Doc. 7).

## RELEVANT FACTS

Plaintiff began his employment with the Montgomery Fire Department in 1985 and worked his way up through the ranks to the position of Chief of Operations which he was promoted to in February, 2017. The position of Chief of Operations is the second highest position in the fire department, answerable only to the Fire Chief. . (DX. 1, Bolling Depo, 10:4 – 11:15, 20:22 – 21:4). This is the position Plaintiff held when he was charged and arrested for Domestic Violence Third Degree Assault on June 28, 2018. (DX. 6, Excerpts of Bolling Personnel File, Bates Stamp No. D407).

The week of June 25, 2018 was a big week for the fire service in Montgomery, Alabama. The Montgomery Fire Department was hosting the Southeastern Association of Fire Chiefs Conference (SEAFC) which includes fire chiefs from South Carolina, Virginia, Georgia, Mississippi and Alabama. The Montgomery Fire Department was also hosting the regional Scott Firefighter Combat Challenge with teams from all over the nation coming to Montgomery to compete. Many MFD members attended events going on in the city that week, including Plaintiff. On the night of June 27, 2018, he attended a reception in association with the Southeastern Association of Fire Chief's Conference. When he left that event, he was driving his city issued Tahoe which was equipped with emergency lights and siren and a two-way radio which allowed him to monitor and communicate with local first responders. (DX. 1, 25:23 – 27:20, 32:10 – 33:18).

Plaintiff drove his city issued vehicle to C. Dunnivan's house. (DX. 1, 33:16 – 33:18). He and Dunnivan had been in a dating relationship at that time for approximately five years. Dunnivan claims Plaintiff and she had both been drinking that evening and into the early morning hours of June 28, 2018 and at some point, they began to argue. The argument escalated to the point that Plaintiff grabbed Dunnivan who broke away and retreated to her bedroom. Plaintiff pursued her and broke through the locked bedroom door where he then punched her in the face with a closed fist. Dunnivan called police, and when they arrived, Plaintiff wasn't at the scene. After speaking with Dunnivan, she advised she didn't wish to prosecute. However, police saw and documented visible injuries on the victim, and based on those injuries, they obtained a warrant on her behalf. (DX. 2, Excerpts of Municipal Court File, Bates Stamp Nos. D151, 157-161).

After the warrant was issued for Plaintiff's arrest, Ron Sams, Director of Public Safety for the City of Montgomery, was notified by the Montgomery Police Department that the warrant had been issued and that law enforcement had been unable to locate Plaintiff. Director Sams notified Fire Chief Jordan and Plaintiff was subsequently located later that morning attending the SEAFC Conference. MPD agreed to allow MFD Chief of Staff Petrey to escort Plaintiff to his residence to change out of his uniform into civilian clothes then turn himself in. (DX. 3, Affidavit of R. Sams).

The Montgomery Fire Department Policies and Procedures require City Investigations [1] to conduct an investigation into the facts and circumstances surrounding an employee's arrest. (DX.4, Excerpts of MFD Rules and Regulations, Bates Stamp Nos. D142- D143). Director Sams was aware that Plaintiff had been charged with Domestic Violence Assault and believed the facts

---

[1] The Office of City Investigations is a division of the Mayor's Office specifically designed to independently investigate personnel related complaints and/or grievances and citizen complaint.

and circumstances surrounding his arrest could constitute violations of City of Montgomery or Montgomery Fire Department Policy. Therefore, he immediately made a request for an investigation to be conducted. (DX. 5, Excerpt of City Investigations File, Bates Stamp No. D18).

The morning of June 29, 2018, Chief Jordan and Chief of Staff Petrey met with Plaintiff, and he was placed on administrative leave with pay pending the outcome of his city investigation. (DX 6, Bates Stamp No. D412). Later that morning, Plaintiff submitted his resignation effective immediately. (DX. 6, Bates Stamp No. D407).

**ARGUMENT**

**A.     Fourteenth Amendment Due Process**

**Constructive Discharge**

"In the Eleventh Circuit it is extremely difficult to establish a constructive discharge. A resignation will be considered voluntary even where the only alternative to resignation is possible termination for cause, criminal charges, or other unpleasant alternatives 'because the fact remains that [the] plaintiff had a choice. . . [to] stand pat and fight.' *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995)(quoting *Christie v. U.S*., 518 F.2d 584, 587, 207 Ct. Cl. 333 (Ct. Cl. 1975))." *Soloski v. Adams*, 600 F. Supp. 2d 1276, 1307 (N.D. Ga. 2009).

In the present case, Plaintiff was placed on administrative leave with pay pending the outcome of the administrative investigation into the facts surrounding his arrest. ((DX. 6, Bates Stamp No. D412). He claims he was forced to resign when he was told by the fire chief that "the boss" had already started termination proceedings and that he would lose his retirement if he didn't go ahead and resign. (DX. 1, 59:18 – 60:7, 85:12 – 86:8).

The City of Montgomery Employee Retirement System is a separate entity from the City of Montgomery and was created by the Alabama legislature. The law provides that any member who has completed 20 years of service or reached the minimum service retirement age "shall be entitled to such retirement allowance whether he voluntarily separates from service or is dismissed for cause or for any other reason." (Act 2013-385). Plaintiff had been employed by the City of Montgomery for 33 years. (DX. 1, 102:1 – 102:4). Therefore, he was eligible to receive retirement benefits regardless of his reason for separation from employment, and he knew it. (DX. 1, 93:14 – 95:15). Plaintiff was also fully aware of the due process afforded employees facing disciplinary action. In his position as Chief of Operations, he was an integral part of the administrative due process afforded employees facing disciplinary action. (DX. 1, 18:2 – 19:4,147:15 – 148:20). He could not name any employee who had been terminated without being afforded due process. (DX. 1, 102:9 – 103:2).

He cannot now assert that, despite his personal knowledge to the contrary, he believed he would lose his retirement benefits if he didn't submit his resignation effective immediately. Neither can he assert that he believed he would receive compensation for sick and annual leave if he submitted his resignation. Just as he testified that he didn't know of anyone who had ever been terminated without being afforded due process, he also couldn't identify anyone who received their leave payout after resigned without giving the requisite notice. (DX. 1, 98:6 – 99:19).

Plaintiff contends he had no alternative to resignation but that simply isn't true. He was certainly facing an investigation and potential disciplinary action, but even his own testimony indicates he was aware he was entitled to due process. He also understood the nature of his

choice. "The Eleventh Circuit has established 5 factors a court must consider in determining whether a resignation was coerced.

> (1) whether the employee was given some alternative to resignation;
>
> (2) whether the employee understood the nature of the choice he was given;
>
> (3) whether the employee was given a reasonable time in which to choose;
>
> (4) whether the employee was permitted to select the effective date of the resignation; and
>
> (5) whether the employee had the advice of counsel.

*Hargray*, 57 F.3d at 1568. When assessing these factors, courts are instructed to consider the totality of the circumstances. Id." *Soloski v. Adams*, 600 F. Supp. 2d 1276 (N.D. Ga. 2009).

Plaintiff resigned effective immediately. He acknowledged that the Montgomery City County Personnel Board rules require an employee to provide 7 days' notice, and he could not identify any individual who had resigned without giving the requisite notice who received their leave payout. He also could not identify anyone who, during his 33 years with the City of Montgomery, had been terminated without being afforded due process. (DX. 1, 100:9 – 103:2). Yet he is now attempting to convince the Court that he legitimately believed he would be terminated without the benefit of due process and that he would lose his retirement benefits. There is no documentation indicating termination proceedings had begun. The only documentation demonstrates that he had been placed on administrative leave with pay pending the outcome of an investigation to determine whether he had violated any departmental, city or personnel board rules. When he was served with that documentation, he submitted his resignation "effective immediately." This does not constitute constructive discharge.

"Procedural due process, protected by the Constitutions of the United States and this State, requires notice and an opportunity to be heard when one's life, liberty, or property interests are about to be affected by governmental action." *Brown's Ferry Waste Disposal Ctr., Inc. v. Trent*, 611 So. 2d 226, 228 (Ala. 1992). Since Plaintiff resigned prior to the institution of any disciplinary action, he was not entitled to due process. As such, his right to due process under the US Constitution and the Alabama Constitution was not violated.

<h3 align="center">29 USC §201, Fair Labor Standards Act</h3>

Plaintiff alleges the City violated the Fair Labor Standards Act by refusing to pay him for any unused compensatory time he earned while employed with the City. (Doc. 1, p. 6).  Plaintiff was paid for his accrued compensatory time on July 20, 2018. The funds were direct deposited into the accounts previously designated by Plaintiff for purposes of direct deposits of compensation earned from the City of Montgomery. (DX. 7, Affidavit of B. Gramling).

<h3 align="center">Breach of Contract</h3>

Plaintiff alleges a breach of contract claiming the "City's Personnel Board Rules and Regulations" entitled him to be paid for accrued sick and annual leave. (Doc. 1, p. 7). The Montgomery City County Personnel Board is a separate entity from the City of Montgomery created by legislative Act No. 2280 of 1971); and while the City is governed by the rules of the Personnel Board, those rules do not constitute a contract between the City and its employees. Regardless, Plaintiff did not separate employment in good standing and would not have been entitled to a payout of accrued sick and annual leave.

Rule VIII, Section 4(b) of the Personnel Rules entitles any employee who leaves service in good standing to be compensated for all annual leave up to the maximum amount designated for years of service. Rule VIII, Section 5(f) entitles any employee leaving service in good

8

standing to be compensated for ½ of all sick leave accrued through the date of separation not to

exceed 360 hours. Rule X, Section 1 defines good standing. It states:

> Any employee wishing to leave the classified service in good standing shall file
> with his or her department head through his or her supervisor a written resignation
> stating the effective date of the resignation and the reason for leaving. The notice
> must be submitted in accordance with department policy. Such notice shall be
> submitted to the appointing authority and personnel director. If the department
> does not have a policy, notices should be submitted a minimum of 7 calendar days
> of the effective date of the resignation. Failure to comply with the procedure may
> be the cause of denying annual and sick leave payout and the denial of future
> employment.

This rule requires an employee to provide seven (7) days' notice prior to the effective

date of his resignation. Plaintiff testified that he was aware of that rule, and in fact, as the Chief

of Operations of a major metropolitan fire department, it would be his responsibility to be

familiar with all the administrative rules governing his employees. (DX. 1, 98:6 – 98:15).

Plaintiff submitted his resignation "effective immediately." As such, he did not leave service in

good standing and was not entitled to a payout of accrued sick and annual leave,

## Race Discrimination – 42 USC §1981

"A prima facie case of disparate treatment discrimination consists of four elements: 1) the

plaintiff belongs to a protected class; 2) the plaintiff was qualified to do the job; 3) the plaintiff

was subjected to an adverse employment action; and 4) the plaintiff's employer 'treated similarly

situated employees outside [his] class more favorably.' *Crawford v. Carroll*, 529 F.3d 961, 970

(11th Cir. 2008)." *Ambus v. AutoZoners, LLC*, 71 F. Supp. 3d 1280, 1293  (M.D. Ala. 2014).

The chain of command within the fire department begins with the fire chief. Answering

directly to him are the chief of operations, chief of staff and chief executive officer. [2] (DX. 1,

---

[2] These three positions are appointed by the fire chief. Montgomery City County Personnel Board classifies them as assistant chiefs within the merit system. However, they receive additional incentive pay for holding these positions and supervise the remaining six assistant chiefs who report directly to them.

20:22 – 21:4) There are then 9 assistant chiefs and 17 district chiefs. Below them are the captains, lieutenants, sergeants and fire fighters. At the time of Plaintiff's resignation, he held the position of Chief of Operations of the Montgomery Fire Department. (DX. 6, Bates Stamp No. D407).

When asked during his deposition to identify other individuals who had held that position and been arrested, not just for domestic violence but for any crime, he could not identify anyone. When asked to identify any assistant chief who had been arrested for any crime while holding the position of assistant chief, he could not name anyone. In fact, the only district chief he could identify who had been arrested while holding the position of district chief was Plaintiff himself. He was arrested in 2007 on the charge of domestic violence while holding the position of district chief in the Montgomery Fire Department. (DX. 1, 109:5 – 112:5). During Plaintiff's 33 years with the Montgomery Fire Department, he has been arrested and charged with domestic violence at least eight times:

| | |
|---|---|
| June, 2018 | Domestic violence III Assault (DX. 2, D151). |
| November, 2007 | Domestic Violence III Harassment (DX. 1, 111:17 – 112:5; DX. 6, Bates Stamp Nos. D195-196, D201-207) |
| July, 2004 | Civil protective order (DX. 1, 128:9 – 130:10) |
| June, 2000 | Domestic Violence III (DX. 1, 120:3 – 121:23; DX. 6, Bates Stamp Nos. D229-230, D238) |
| March, 2000 | Domestic Violence III (DX. 1, 121:19 – 121:23; DX. 6, Bates Stamp Nos. D208-210, D237, D243-246) |
| April, 1999 | Domestic Violence III (DX. 125:22 – 126:14; DX. 6, Bates Stamp Nos. D214) |
| October, 1998 | Domestic Violence III |
| August, 1996 | Domestic Violence III |

October, 1993                         Domestic Violence III (DX. 1, 126:22 – 127:16)

When asked to identify anyone who has maintained employment with the Montgomery Fire Department who has been arrested numerous times for domestic violence, he could not identify anyone. During the discovery process, Plaintiff asked the City to identify all fire fighters by rank and name who had been arrested between 2015 and 2019. The City identified 5 firefighters, 1 sergeant, 1 lieutenant and one captain who had been arrested. The City was further asked to identify firefighters who had been placed on administrative leave pending an investigation. In response, the City identified 2 firefighters, 2 sergeants, 1 lieutenant and 1 captain. (DX. 8, City of Montgomery's Responses to Plaintiff's Interrogatories No. 6 and 7). There was not one single assistant chief, chief of operations or chief of staff who had ever been arrested. Plaintiff cannot establish a prima facie case of discrimination because he cannot identify a comparator nor can he identify an adverse employment action. While he claims that Chief Jordan told him "the boss" had begun termination proceedings, he admitted under oath that neither Director Sams nor Mayor Strange had communicated with him directly regarding his arrest or any purported disciplinary action. (DX. 1, 105:15 – 105:18, 149:5 – 149:15)

## CONCLUSION

There is no genuine issue of material fact to support Plaintiff's allegations against Defendant City of Montgomery.  Plaintiff has failed to state any claim as to the City of Montgomery upon which relief may be granted. As such, the City is entitled to summary judgment as to all claims.

Respectfully submitted this the 9th day of January, 2020.

/s/Stacy Bellinger_____
STACY BELLINGER (REE050)

OF COUNSEL:

City of Montgomery
103 North Perry Street
Montgomery, Alabama 36104
ASB 3470 D63S
Telephone: (334) 625-2050
Facsimile: (334) 625-2310
Email: sbellinger@montgomeryal.gov


## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of January, 2020, I electronically filed the foregoing

with the Clerk of the court using the CM/ECF system which will send notification of such filing

to the following parties or counsel:


K. David Sawyer
Julian L. McPhillips, Jr.
516 South Perry Street
Montgomery, AL 36104
kdsawyer64@outlook.com
jullianmcphillips@msg-lawfirm.com

   /s/ Stacy Bellinger
OF COUNSEL