# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| KENNETH BOLLING, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:19-cv-244-ALB |
| CITY OF MONTGOMERY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes to the Court on Defendant City of Montgomery's motion for summary judgment. Doc. 24. Plaintiff Kenneth Bolling filed an opposition, Docs. 28 and 29, to which the City replied, Doc. 30. Upon consideration, the motion is due to be and hereby is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

The following facts are taken in the light most favorable to the nonmovant, Plaintiff Bolling.

The Montgomery Fire Department is led by one chief who appoints a chief of operations, a chief of staff, and a chief executive officer. Below this executive leadership team, there are nine assistant chiefs and 17 district chiefs. Then come captains, lieutenants, sergeants, and firefighters.

Bolling is a black man who was employed by the Montgomery Fire Department from 1985 until 2018. He started as a firefighter and worked his way up to District Fire Chief. In 2008, Fire Chief Miford Jordan promoted Bolling to Assistant Fire Chief. In 2017, he was assigned the additional title of Chief of Operations, which is the second highest position in the department. Bolling received merit raises, excellent reviews, and other commendations and promotions during his long career.

Bolling's government job came with considerable benefits. He could not be fired without cause and without the City following certain procedures. Upon his leaving service in good standing, the City would have to compensate him for accrued annual leave and one-half of accrued sick leave. Even if he were to be terminated for cause, the law provides that any firefighter with enough service credit is entitled to retirement benefits. *See* Ala. Act. 2013-385. Specific to this situation, the Montgomery Fire Department also has a "Domestic Violence Policy," Master Letter File 8-15, that provides for progressive discipline of a fire department employee who is convicted of domestic violence. In relevant part, it (1) provides certain procedures when an employee is arrested for domestic violence, (2) permits suspension, demotion, or other disciplinary action when the employee is "convicted," and (3) states that a "third conviction for an offense involving Domestic Violence will result

2

in the termination of employment of the member." Chief Jordan approved the domestic violence policy in 2008.

Bolling has never been convicted of domestic violence, but he has been charged with domestic violence at least eight times during his career.

In late June of 2018, Bolling was charged again with domestic violence. The Montgomery Fire Department was hosting the Southeastern Association of Fire Chiefs Conference. Bolling left the conference around 10pm on June 27, 2018, drove to his girlfriend's house in his work vehicle, drank into the early morning hours, got into an argument with his girlfriend, pushed through a locked door, and punched his girlfriend in the face. He left. She called the cops. The police documented her injuries and, although she said she did not want to prosecute, the police obtained a warrant for Bolling's arrest for Domestic Violence Assault.

High-ranking officials in the City were notified the next day, June 28. Fire Chief Jordan contacted Bolling and told him that a warrant had been issued for his arrest. Chief of Staff John Petrey took Bolling home so he could change into civilian clothes. Bolling turned himself in that morning and remained in jail until after midnight.

The next morning, June 29, Chief Jordan and Chief of Staff Petrey met with Bolling at the office and put him on administrative leave until a city investigation could be conducted.

Chief Jordan believed that the Mayor and the Director of Public Safety had the authority to terminate Bolling immediately. Bolling testified that Chief Jordan told him that morning that he was going to be terminated. Specifically, Bolling testified that Chief Jordan told him that he was going to be fired immediately. "I stayed on the phone for over an hour with the boss during this conference yesterday all through my lunch break trying to get them to follow the domestic policy, for you to go to court and then start." "Man they are going to fire you." "The termination process is already started. They started the paperwork yesterday." "Bolling, I'm talking to you like a brother. There ain't no fighting this."

At the morning meeting, Chief Jordan and Chief of Staff Petrey advised Bolling that he should resign. Chief Jordan told him that his "best bet would be to resign to keep from losing all of [his] benefits." "[H]e needs to resign immediately and then go sign his retirement papers. If not, he's going to lose everything." "They are going to take your retirement. You're going to lose all your benefits."

Shortly after that meeting, Bolling submitted a letter of resignation effective immediately.

About a month later, the domestic violence charge against Bolling was dismissed.

## STANDARD OF REVIEW

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The Court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials.... [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to

each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## DISCUSSION

Bolling brings four claims against the City. Count I of the operative complaint alleges a due process violation, Count II alleges that Bolling was not compensated for overtime under the Fair Labor Standards Act, Count III alleges a breach of contract claim because Bolling was not compensated for accrued annual leave or sick leave, Count IV alleges that Bolling was terminated based on his race in violation of 42 U.S.C. § 1981. *See* Doc. 1. Bolling concedes that summary judgment is appropriate as to Count II, but he argues that the City's motion for summary judgment should be denied as to all other claims.

**A. Genuine issues of material fact preclude summary judgment on Count I (due process).**

The City's motion for summary judgment is due to be denied on Count I (due process). The City concedes that Bolling had a property interest in continued employment that could be removed only by affording him due process. The City argues, however, that Bolling voluntarily resigned from his position, which mooted

the need to provide him with process. Bolling, on the other hand, argues that he was constructively discharged.

The City makes two arguments in support of its position, neither of which is persuasive.

First, the City argues that Chief Jordan's statements during the morning meeting with Bolling, which he denies making, are hearsay that cannot be considered by the Court. But, under Rule 801(d)(2), admissions by a party opponent's agent are not hearsay. "A statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship [] is deemed an admission by a party opponent." *Zaben v. Air Prods. & Chems., Ins*., 129 F.3d 1453, 1456 (11th Cir. 1997). Accordingly, in employment litigation, "statements made by a supervisory official who plays some role in the decision making process are generally admissible." *Id.* Here, the City does not argue—and could not in good faith argue—that Chief Jordan's statements immediately before, during, and after his meeting with Bolling were unrelated to his position as the City's fire chief. Accordingly, those statements are not hearsay.

Second, even considering Chief Jordan's statements, the City argues that Bolling—an experienced supervisor who was familiar with termination proceedings and due process rights—was not coerced or tricked into resigning by anything Chief Jordan may have said. The Eleventh Circuit has held that resignations are presumed

to be voluntary. *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995). That presumption can be overcome (1) where the employer forces the resignation by coercion or duress or (2) obtains the resignation by misrepresenting a material fact. *Id.* This test requires an objective inquiry into the surrounding circumstances, including such factors as (1) whether the employee was given an alternative to resignation, (2) whether the employee understood the alternative, (3) whether the employee had a reasonable time to decide, (4) whether the employee chose the effective date of the resignation. and (5) whether the employee had the advice of counsel. *Id.* "[R]esignations can be voluntary even where the only alternative to resignation is facing possible termination for cause." *Id.* "The one exception to this rule is where the employer actually lacked good cause to believe that grounds for the termination . . . existed." *Id.*

Having reviewed the evidence on file and Bolling's deposition testimony, the Court concludes that Bolling has introduced substantial evidence in support of constructive discharge. Much of this comes down to Bolling's credibility, but Bolling has also introduced extrinsic evidence in support of his claims. First, there is substantial evidence that the City did not have cause under its own policies to terminate Bolling, such that threats that he would be terminated were false: (1) the department policy on domestic violence reflects that a charge of domestic violence

8

is insufficient for termination,[1] (2) Bolling has been charged with domestic violence before without being terminated, (3) other firemen, although of lesser rank, have been charged with domestic violence without being terminated, and (4) the domestic violence charge was dismissed because the victim had not wanted to press charges in the first place. Second, because he resigned immediately, Bolling lost benefits (accrued sick leave and vacation pay) that he would have received had he given seven days notice. *Compare Poindexter v. Mickles*, 946 F. Supp. 2d 1278 (M.D. Ala. 2013) (summary judgment denied under coercion theory where employee was pressured to resign immediately to her detriment). Third, Bolling testified that Chief Jordan told him, incorrectly, that he would lose retirement benefits if he were terminated that he would not lose if he resigned. *See Litaker v. Hoover Bd. of Educ.*, 277 F. Supp. 3d 1267 (N.D. Ala. 2017) (summary judgment denied under misrepresentation theory based on inaccurate statements by a supervisor). Fourth, the surrounding circumstances support Bolling's testimony that he was coerced: he had just been released from jail at the time of the meeting, he did not have advice of counsel, and he was not offered an opportunity for reflection. Whether Bolling was constructively discharged is a fact question for a jury.

---

[1] The City argues that, although this policy was approved in 2008, it had fallen out of use by the time of Bolling's charge for domestic violence. But that creates a fact issue for a jury to resolve.

One final point: how the due process/constructive discharge claim should be charged to the jury is a question for later. The City did not differentiate between the misrepresentation theory and coercion theory in its motion. Its initial brief addressed the two theories as one, and its reply brief relied almost entirely on its hearsay argument without addressing the merits. For his part, Bolling argued that there was enough evidence to go to trial on each theory separately as a distinct claim. It is unnecessary to resolve this tension in this opinion, and the Court declines to do so. However, the Court anticipates that the parties will further develop the issue as the case progresses.

**B. Genuine issues of material fact preclude summary judgment on Count III (breach of contract).**

Genuine issues of fact also preclude summary judgment on the breach of contract claim. The City denied Bolling's request to pay accrued annual leave and a portion of his accrued sick leave because he did not provide seven days notice of his resignation.[2] The same issues that require the denial of summary judgment on Bolling's constructive discharge claim warrant the denial of summary judgment on this claim too. That is, if the City constructively discharged Bolling, then the City

---

[2] The City asserts without analysis that the personnel board rule about the payment of accrued annual and sick leave does not constitute an employment contract. Because that argument is not developed in the City's brief and it is the City's initial burden to move for summary judgment, the Court will not address that argument here.

10

cannot rely on his failure to provide seven days notice as a basis not to pay him for accrued annual and sick leave.

**C. Summary judgment is due to be granted on Count IV (race discrimination)**

Unlike the counts above, Bolling's racial discrimination claim under Section 1981 fails to survive summary judgment. There is no direct evidence of racial discrimination nor is there a convincing mosaic of circumstantial evidence that suggests race was at play in the City's employment decisions with respect to Bolling. Bolling does not argue otherwise.

Instead, Bolling argues that his claim survives summary judgment under the *McDonnell Douglas* burden-shifting framework. "When proceeding under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis v. City of Union City*, 918 F.3d 1213, 1221 (11th Cir. 2019) (en banc). To meet the fourth element of this test, a plaintiff must identify comparators who are "similarly situated in all material respects." *Id.* at 1224. This means that "a plaintiff and her comparators must be

sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* at 1228.

The City correctly argues that Bolling cannot meet the fourth prong of the *McDonnell Douglas* test. Bolling has identified one white firefighter and one white sergeant who were not constructively discharged or terminated after they were arrested for domestic violence in 2018. *See* Doc. 28-3. But Bolling was not a line firefighter or lower-level manager—he was in the top echelon of the department, reporting directly to the Chief as his second-in-command. Employers have traditionally, and reasonably, held the leaders of their organizations to a higher standard. *E.g.*, The King James Bible, Luke 12:48 ("For unto whomsoever much is given, of him shall be much required: and to whom men have committed much, of him they will ask the more."). And lower level government employees, unlike their supervisors, generally do not create public scandal or attract press reports when they commit misconduct. Bolling has not identified anyone else in the management level of the department who was ever arrested or charged with a crime. There is no evidence that Bolling's race had anything to do with his discharge.

## CONCLUSION

Based on the foregoing, the Court orders as follows:

1. The City's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

2. The motion is **GRANTED** as to Count II under the Fair Labor Standards Act and Count IV under 18 U.S.C. § 1981.

3. Count II and Count IV of the Complaint are **DISMISSED WITH PREJUDICE**.

4. The motion is **DENIED** as to Count I and Count III, which remain pending.

5. This case is not closed.

**DONE** and **ORDERED** this 2nd day of April 2020.

                                            /s/ Andrew L. Brasher
                                  ANDREW L. BRASHER
                                  UNITED STATES DISTRICT JUDGE